**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

LISA BEEKMAN,

        Plaintiff,

vs.

NESTLE PURINA PETCARE
COMPANY,

        Defendant.

No. C07-3079-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

———————————

**TABLE OF CONTENTS**

I.  **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        *1.  The parties and policies involved* . . . . . . . . . . . . . . . . 3
        *2.  Beekman's absences* . . . . . . . . . . . . . . . . . . . . . . . . 5
        *3.  Beekman's injuries* . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *B.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        *1.  Beekman's claims* . . . . . . . . . . . . . . . . . . . . . . . . . 10
        *2.  The Company's Motion for Summary Judgment* . . . . . . . . 11

II.  **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *A.  Standards for Summary Judgment* . . . . . . . . . . . . . . . . . . . 13
    *B.  Beekman's FMLA Claims* . . . . . . . . . . . . . . . . . . . . . . . . 17
        *1.  The applicable statute of limitations* . . . . . . . . . . . . . . 17
        *2.  Beekman's FMLA interference claims* . . . . . . . . . . . . . . 24
            *a.  January 18 and 19, 2005* . . . . . . . . . . . . . . . . 25
            *b.  May 5, 2005* . . . . . . . . . . . . . . . . . . . . . . . 26
            *c.  July 29, 2005* . . . . . . . . . . . . . . . . . . . . . . 29
            *d.  November 15, 2005* . . . . . . . . . . . . . . . . . . . 31
            *e.  November 19 and 20, 2005* . . . . . . . . . . . . . . 33
        *3.  Beekman's FMLA retaliation claim* . . . . . . . . . . . . . . . 34

    a.  *Beekman's prima facie case of FMLA retaliation* . . . . 35
    b.  *The Company's legitimate, non-discriminatory reason*
       *and Beekman's showing of pretext* . . . . . . . . . . . . . 38
  *C. Beekman's Common Law Wrongful Discharge Claim* . . . . . . . . . . . 41
    *1.  Beekman's status as an at-will employee* . . . . . . . . . . . . . . 41
    *2.  Beekman's prima facie case of wrongful discharge* . . . . . . . 45
    *3.  The Company's legitimate, nondiscriminatory reason and*
       *Beekman's showing of pretext* . . . . . . . . . . . . . . . . . . . . . 49

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

A former employee at a pet food company alleges that the company interfered with her ability to take Family Medical Leave Act ("FMLA") leave on several occasions, retaliated against her for exercising her rights under the FMLA when it terminated her, and wrongfully discharged her in violation of the public policy set out in Iowa's workers' compensation laws, Iowa Code Chapter 85. The company, however, claims that it repeatedly honored the employee's request for FMLA leave and workers' compensation claims. The employee's termination, according to the company, was due to her abysmal attendance record and her accumulation of more than a sufficient number of points to terminate her under its attendance policy.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt, here, an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, the court will set forth sufficient facts, both undisputed and disputed, to put the parties' arguments in context concerning the defendant's motion for summary judgment. Unless otherwise indicated, the facts recited here are undisputed, at least for purposes of summary judgment. Additional factual allegations and the extent

to which they are or are not disputed or material will be discussed, if necessary, in the court's legal analysis.

### 1. *The parties and policies involved*

The defendant, Nestle Purina Petcare Company ("Company"), hired plaintiff, Lisa Beekman, in April of 2001. During Beekman's employment with the Company, she worked at its Fort Dodge, Iowa facility. Her last position was in production as a Process Relief Operator, where she covered jobs on the production line while the regular operators were on break. When regular operators were not on break, Beekman performed general housekeeping tasks. The Company terminated Beekman on November 22, 2005, for allegedly violating its attendance policy.

The Company has a "no fault" attendance policy. Any absence from an employee's scheduled shift is recorded, unless the absence falls into certain categories that are not assessed attendance points. Some of these categories include: bereavement leave, military duty, jury duty, court appearance (with subpoena), holiday or vacation, approved leave of absence, work related injury, temporary layoff, FMLA leave, shift curtailment by the Company, union business, and preauthorized absences. According to the Company, if an employee is absent from work for any reason other than those reasons identified in the attendance policy, the employee is assessed attendance points.

The attendance points are assessed as follows: 2 points per absence; 1 point per additional consecutive day of absence; 1 point per tardy[1]; and 1 point per early leave[2].

---

[1] The attendance policy defines "tardy" as an absence of two hours or less from a scheduled shift and provides that more than two hours tardy will be considered a full absence.

[2] The attendance policy defines "early leave" as leaving the premises before the
(continued...)

An employee can also be assigned an additional point if they fail to call-in prior to the shift to report the absence[3], at least one hour prior to the start of their shift. The only person responsible for deciding whether an absence should not be scored points due to an excuse, at the Company's Fort Dodge facility, is Mary Crimmins, the human resources manager. If the employee receives certain sums of points within a 12 month period, he or she will receive varying levels of discipline as follows: 6 points warrants a verbal warning; 8 points, a written warning; 10 points, one day unpaid leave; and 15 points, termination. The attendance policy further states that employees who continuously hover around or over 6 points, or who exhibit trends of poor attendance, may be subject to more severe discipline.

Information concerning absences, as well as instructions concerning what to do in the event of an absence, is contained in an employee handbook. The handbook also contains a section describing the procedures to be followed if an employee needs to take a leave of absence under the FMLA—the employee must immediately notify his or her supervisor and obtain and submit the appropriate forms from, or to, the human resources department. These forms include the Request for Family/Medical Leave and Certification of Health Care Provider forms. According to the handbook, it is the employee's responsibility to make sure that the doctor's statement concerning the request for FMLA leave has been completed properly and received by the Company. The handbook also

---

[2](…continued)
end of the employee's scheduled shift. Leaving before completing half of the schedule shift will be considered a full absence.

[3] The policy requires employees to call their supervisor to report an absence. However, as will be discussed in greater detail below, Beekman claims that it was common for her to call Mary Crimmins, the human resources manager, to report absences and that she was never told that this was inappropriate until after she received a point for doing so.

instructs employees to consult the plant attendance policy for further details. Beekman received a copy of this handbook.

## 2. *Beekman's absences*

Pursuant to the attendance policy, Beekman missed work and was properly assessed points on several occasions. The parties agree that Beekman had the following scored absences between 2001 and 2004:

> Plaintiff's first unexcused absence occurred on August 2, 2001 and, on that date, Plaintiff was issued 2 points per the Attendance Policy. On September 5, 2001, Plaintiff was absent from work and received [2] attendance points. On October 2, 2001, Plaintiff left work early and received [1] attendance point. On October 14, 2001, Plaintiff was sick and received [2] attendance points. On October 14, 2001, Plaintiff received a Verbal Warning for exceeding 6 points. On January 20, 2002, Plaintiff was absent from work and received 2 points. On January 20, 2002, Plaintiff received a Written Warning for accumulating 9 attendance points. On January 21, 2002, Plaintiff was absent from work and received 1 point for a consecutive absence. On January 21, 2002, Plaintiff was placed on a Decision Making Leave suspension for accumulating 10 attendance points. Plaintiff continued to receive attendance points following her Decision Making Leave in January, 2002. Plaintiff received a Verbal Warning on February 20, 2003 for accumulating 8 attendance points. When Plaintiff received her Verbal Warning on February 20, 2003, Plaintiff was informed, in writing, that if she received another attendance point before her point total fell below 8 points, a Written Warning interview would be conducted with her. Plaintiff subsequently received an additional point for an unexcused tardy on April 21, 2003 and was issued a Written Warning for exceeding 8 points. On June 15, 2003, Plaintiff was sick and received 2 attendance points for her absence. On July 1, 2003, Plaintiff received a Decision Making Leave suspension for accumulating 11 attendance points. Plaintiff

5

continued to incur additional attendance points throughout the next year and remained at or above 11 points until late February 2004 when some of her points rolled off. On June 3, 2004, Plaintiff left work early and was assessed [1] attendance point, bringing her point total to 10 points which resulted in another Decision Making Leave for Plaintiff.

Doc. No. 28-3.

In 2005, the year containing all of the absences at issue in this lawsuit, the parties agree on the scoring for some of Beekman's absences and disagree on others. The parties, first, disagree as to whether Beekman's absence on January 13, 2005, was properly scored, but Beekman does not claim that the Company's alleged error in scoring points against her on this date was in violation of FMLA. Beekman received 2 points for the un-excused absence, which caused her to have 10 points at the time and to receive a Decision Making Leave suspension. The parties agree, however, that Beekman properly received 1 point for leaving early on January 18, 2005, and received 2 points for a full-day absence on January 19, 2005.

On May 5, 2005, the Company gave Beekman 1 point for leaving early to go to the hospital to have her mouth examined. Beekman was also absent the following day, May 6, 2005, for surgery related to the pain in her mouth. The Company did not initially excuse either of Beekman's absences, even though she requested FMLA leave. In support of her request, Beekman submitted a Certification of Health Care Provider form indicating that she had a tooth abscess and needed to see a dentist as soon as possible. When this did not suffice, Beekman requested another certification form from the Company, and her dentist completed that form and it was returned to the Company on May 11, 2005—the Company claimed that this subsequent form did not show Beekman had a serious health condition, and only showed that she would not require additional treatment, was not

receiving continuing treatment, and that she did not need to be absent from work on any day other than May 6, 2005. On May 18, 2005, the Company received a revised certification form from the dentist, which contained additional notes. The notes had been added by someone other than the person who had signed the form and indicated that Beekman was receiving antibiotics and had been seen in the emergency room. The Company granted FMLA leave for May 6th but not May 5th.

On July 29, 2005, Beekman received 2 points for arriving at work more than two hours late. Beekman had scheduled a doctor's appointment relating to her mother's cancer on that day. Beekman had planned to accompany her mother to the appointment, and she believed that she would be able to arrive at work on time after the appointment. There were complications, according to Beekman, which caused the appointment to take longer than expected. Yet, the Company denies receiving any documentation demonstrating that her mother had a doctor's appointment on that date and claims that she had not previously requested leave in advance of her mother's scheduled appointment. According to the Company, Beekman did not even notify it that she needed FMLA leave when she arrived at work on July 29, 2005. However, the Company admits that Beekman had properly requested intermittent leave for her mother's cancer treatment and appointments, and that leave was granted on various dates in September of 2003, October of 2003, December of 2003, January of 2004, July of 2004, August of 2004, and September of 2004. Because of this absence, Beekman received a Decision Making Leave suspension, for accumulating more than 10 points, on August 1, 2005.

On November 15, 2005[4], the Company scored Beekman 1 point for an improper call-in, but she was granted FMLA leave for being absent that day, due to a work-related back injury. Beekman denies that her call-in was improper and claims that the Company changed its rationale for assessing the point—Beekman claims that, initially, the point was scored because the call-in was allegedly late, but after she provided the Company with cell phone records showing that the call was not late, the Company claimed the point was for failing to call a supervisor. The Company claims that Beekman was told from the start that the point resulted from her failure to call her supervisor. Beekman had left a message with Mary Crimmins in human resources regarding the absence, and claims that she had not previously been disciplined for calling Crimmins instead of her supervisor to report absences. After the addition of this 1 point, Beekman had 11 points.

On both November 19 and 20, 2005, a Saturday and Sunday, Beekman failed to show up for work. The Company scored Beekman 2 points for each un-excused absence and an additional point for each improper call-in, for a total of 6 points. Even though Beekman was restricted to working 40 hours per week, the Company claims that Beekman was supposed to work, as all production employees were scheduled to work, that weekend. The parties agree that the Company once had a policy where employees with 40 hour per week work restrictions—who had not yet worked 40 hours during the week—were not required to work weekends, but they also agree that the policy changed, requiring employees with 40 hour per week work restrictions to work scheduled weekends, until they had worked 40 hours. Exactly when the policy was changed is in dispute. Beekman had not logged 40 hours during the week prior to November 19, 2005, and she did not call to

---

[4] Between July 29, 2005, and November 15, 2005, Beekman received 2 points for an un-excused absence—Beekman does not contest that these points were properly scored.

notify her supervisor that she would be absent. The parties agree that, at the most, Beekman should have been assessed only 5 points, rather than 6, because a second consecutive absence is only scored 1 point, rather than 2 points. However, with the additional 6 attendance points, Beekman had a total of 17 points as of November 20, 2005.

### 3.    *Beekman's injuries*

Beekman also reported five injuries during her employment with the Company. The first four injuries occurred in July of 2001, March of 2004, October of 2004, and November of 2004. In September of 2005, Beekman was approved for FMLA leave due to a back injury. Beekman claims that this leave related to a previous work-related back injury, but the Company claims that it did not know whether it was work-related. Beekman completed FMLA forms for her back, which set a 30 pound lifting restriction—her doctor had also limited her to working no more than 40 hours per week. Crimmins had concerns about Beekman's lifting restrictions because the restrictions allegedly prevented Beekman from performing her job. As a result, Crimmins called Beekman's doctor to have the lifting restrictions removed. During this call, Beekman and a union representative were in the room, but the call was not on speaker phone.

Beekman's fifth injury took place in November of 2005, approximately. Beekman slipped on some oil and fell by the bright stacker and re-injured her back. The parties dispute whether Beekman informed her supervisor of the injury. At the time of this injury, Beekman was undergoing physical therapy on her own for her previous back injury. Beekman was unable to work on November 15, 2005[5], because of her back injury.

---

[5]    Between September and November of 2005, Beekman took time off because of her back injury on September 23, October 26, and November 15.

On November 22, 2005, the Company terminated Beekman—the Company told her that she was being terminated because she had accumulated more than 15 attendance points. Beekman was a member of the United Food and Commercial Workers Union, Local No. 6 (the "Union"), which filed a grievance[6] on Beekman's behalf. Because of the grievance, the Company reviewed Beekman's attendance points a second time. After completing the second review of Beekman's attendance points, the grievance was denied. The Union eventually withdrew the grievance.

## B. Procedural Background

### 1. Beekman's claims

On November 16, 2007, Beekman filed her Complaint and Jury Demand with this court. Doc. No. 2. In Count I of her complaint, Beekman claims that she was wrongfully discharged in violation of public policy—Beekman claims that the Company terminated her because she pursued workers' compensation claims and that, as a result, her termination was in violation of the public policy found in Iowa Code Chapter 85[7]. In Count II, Beekman claims that the Company interfered with her right to take FMLA leave and that her termination was in retaliation for exercising her rights under the FMLA. The Company answered this complaint on January 4, 2008, and denied these allegations. Doc. No. 7.

---

[6] As a union employee, under the collective bargaining agreement, Beekman could only be disciplined for "just cause." The collective bargaining agreement also contains grievance and arbitration procedures to be used to resolve disputes between the Company and the Union.

[7] Iowa Code Chapter 85 contains Iowa's workers' compensation laws.

## 2.    *The Company's Motion for Summary Judgment*

On March 27, 2009, the Company filed its Motion for Summary Judgment. *See* Doc. No. 26. In its motion, the Company claims, first, that the two year statute of limitations applicable to FMLA violations has expired on all of Beekman's claims occurring before November 16, 2005. The Company also claims that Beekman's FMLA interference claims should be dismissed because Beekman cannot establish she was entitled to FMLA leave on the dates in question, did not provide the Company with adequate and timely notice of her need for FMLA leave, or failed to follow the Company's call-in procedures. Concerning both the FMLA retaliation and common law wrongful discharge claims, the Company alleges that Beekman cannot demonstrate a causal connection between her protected activity and her termination. The Company also alleges, in respect to both claims, that Beekman cannot prove that its articulated reason for the discharge, that Beekman had accumulated 15 attendance points, was pretextual. Finally, the Company claims that Beekman was not an at-will employee, because of her union membership and the collective bargaining agreement ("CBA") between the Union and the Company, and therefore is not entitled to the protections of the public policy exception to the at-will employment doctrine.

On April 20, 2009, Beekman filed a resistance to the Company's Motion for Summary Judgment. *See* Doc. No. 28. Beekman, first, denies that any of her claims are time-barred by a two year statute of limitations. Beekman asserts that her claims were not ripe until her termination, and that the Company's actions in retaining points on her attendance record—for the absences at issue—was a continuing violation and preserves all of the claims. Alternatively, Beekman argues that a three year statute of limitations applies because the facts suggest that the Company's actions were in bad faith, willful, and

warrant liquidated damages. Beekman also claims that there are genuine issues of material fact related to each of the Company's remaining grounds in its motion.

Beekman's resistance also states, in paragraph 4, that "Plaintiff requests to be heard orally in this matter." Doc. No. 28-1. This apparent request for oral argument does not comply with local rule 56.g. *See* N.D. Ia. L.R. 56.g. ("A request for oral argument must be noted separately in both the caption and the conclusion of the motion or resistance to the motion."); *see also* N.D. Ia. L.R. 7.c. ("A motion will be decided without oral argument unless the court orders otherwise. A request for oral argument must be noted separately in both the caption and the conclusion of the motion or resistance to the motion, and must be supported by a showing of good cause."). The court has decided to rule on the Company's Motion for Summary Judgment without hearing argument. *See id.* In deciding whether to hold oral argument for this motion, the court considered the impending trial date of July 27, 2009, the court's schedule, and the need for oral argument on the issues presented in this case.

The Company filed its Reply Brief on May 4, 2009, which claims that Beekman has not identified a genuine issue of material fact concerning any of the issues in her brief. Doc. No. 34-2. The Company also filed its Reply to Plaintiff's Response to Defendant's Statement of Facts, Doc. No. 34-4, and Beekman filed a Motion to Strike Defendant's Reply to Plaintiff's Response to Defendant's Statement of Facts. Doc. No. 37. On May 11, 2009, the court granted Beekman's motion in its Order Regarding Plaintiff's Motion to Strike, striking the Company's Reply to Plaintiff's Responses to Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment (Doc. No. 34-4). *See* Doc. No. 38.

The Company's Motion for Summary Judgment is now fully submitted, and the court will turn to an analysis of the legal issues presented.

## II.  LEGAL ANALYSIS

### A.  Standards for Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v.*

*Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the

benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgment is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

### B. Beekman's FMLA Claims

The Company seeks summary judgment on Beekman's FMLA interference claims and retaliation claim. First, it claims that all of Beekman's interference claims that occurred before November 16, 2005, are time barred by the two year statute of limitations ordinarily applicable to FMLA violations. Second, the Company alleges that Beekman cannot show, with respect to all of the interference claims, that she: (1) provided the proper notice for any valid FMLA claims, (2) that she was even entitled to FMLA leave, and (3) that she complied with Company procedures in taking leave. Third, the Company claims that, concerning her FMLA retaliation claim, Beekman cannot establish the requisite causal connection between her FMLA leave and her termination, and she cannot demonstrate that the Company's articulated reason for Beekman's discharge—her accumulation of 15 points—is pretext for an unlawful motive. Beekman's responses to each of these arguments will be discussed below, in turn.

### 1. The applicable statute of limitations

The Company claims that some of Beekman's FMLA claims are time barred because the two year statute of limitations generally applicable to FMLA claims had expired before she filed her complaint. Since Beekman filed her complaint on November 16, 2007, the Company claims that any alleged FMLA violations occurring prior to November 16, 2005, should be barred. The Company also claims that the three year statute of limitations is not available to Beekman because she failed to plead willfulness in her complaint.

Beekman argues that the claims should be preserved because they were not ripe until she was terminated and because, under a continuing violation theory, each day that a wrongly assigned attendance point remained on her attendance record was a violation of

the FMLA. Alternatively, Beekman claims that a three year statute of limitations is applicable to her FMLA claims and that all of her claims fall within that period.

In its reply, the Company claims that Beekman does not cite a single source for her ripeness argument and that the courts addressing the continuing violation theory have declined to apply it to FMLA claims.

In general, an FMLA action "may be brought . . . not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). However, "[i]n the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2). Before evaluating whether the two or three year statute of limitations applies, the court will determine if the pre-November 16, 2005, claims are saved by other means.

Beekman argues, as one reason that her pre-November 16, 2005, claims are not barred, that the FMLA claims were not ripe to bring before her termination. Beekman makes this claim while quoting the Code of Federal Regulations's guidance that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." Doc. No. 28-6 (quoting 29 C.F.R. § 825.220). The Eighth Circuit Court of Appeals has also stated that "an FMLA violation occurs when an employer improperly denies a request for leave." *Reed v. Lear Corp.*, 556 F.3d 674, 681 (8th Cir. 2009) (citing *Bush v. Special Sch. Dist. of St. Louis County*, 2008 WL 2397381, at *3 (E.D.Mo. 2008); *Fialho v. Girl Scouts of Milwaukee Area, Inc.*, 2007 WL 1246433, at *2 (E.D.Wis. 2007)). The claim was clearly ripe once the Company informed Beekman that it was denying her request for leave. *See id.* Since Beekman does

not dispute that she was informed each time the Company decided to deny her FMLA leave, Beekman's ripeness argument does not preserve the claims.

Beekman also claims that, because the Company had a points system that ultimately led to her termination, each day that a point scored in violation of the FMLA remained on her record was a continuing violation of the FMLA, because it continued to interfere, deter, or discourage her from exercising her FMLA rights. Beekman does not provide any authority for her contention that a continuing violation theory should apply to the alleged discrete violations in this case.

Recently, a United States District Court in the Western District of Michigan analyzed whether claims, similar to Beekman's, should be saved in *Maher v. International Paper Company*, 600 F.Supp.2d 940 (W.D.Mich. 2009). In *Maher*, the court evaluated whether some of the plaintiff's alleged FMLA violations, that fell outside of the 2 year statue of limitations but inside the 3 year statute of limitations, should be time-barred. *Maher*, 600 F.Supp.2d at 945. Although the court found a genuine issue of material fact concerning whether the defendant acted willfully, triggering the 3 year statute of limitations, the court found that the alleged violations occurring outside of the 2 year statute of limitations would be otherwise barred. The court found that the United States Supreme Court's reasoning in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), that "[a] new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from past discrimination," *Mahr*, 600 F.Supp.2d at 949 (citing *Ledbetter*, 550 127 S.Ct. at 2169), was applicable to the discrete FMLA violations and that The Lilly

Ledbetter Fair Pay Restoration Act of 2009[8], did not overrule the Court's reasoning as applied to FMLA violations. *Id.* at 951. Because the *Mahr* court refused to look at alleged FMLA violations in an attendance policy points system as deserving unified treatment, the court found that "the FMLA limitations period began to run for each denial of FMLA leave . . . at the time" of the denial. *Mahr*, 600 F.Supp.2d at 950.

Applying the court's reasoning in *Mahr*, and the circuit's finding that "an FMLA violation occurs when an employer improperly denies a request for leave," *Reed*, 556 F.3d at 681, the court finds that each alleged violation of FMLA that precedes the applicable statute of limitations is barred, so far as Beekman claims that it is a discrete violation of FMLA. Because all of the alleged violations that occurred before November

---

[8] The court noted that the Act:

> only affects the *Ledbetter* decision with respect to the timeliness of discriminatory compensation claims. The more general rule announced in *Ledbetter*—that the charging period is triggered when a discrete unlawful practice takes place—reaffirmed the principles in [*Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) and *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)] and survives the enactment of the Act.

*Maher*, 600 F.Supp.2d at 951, n. 5; *see also* The Lilly Ledbetter Fair Pay Restoration Act of 2009, Pub.L. 111-2, § 2, 123 Stat. 5 (2009) ("This Act. . . . appl[ies] to all claims of discrimination in compensation under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*), title I and section 503 of the Americans with Disabilities Act of 1990, and sections 501 and 504 of the Rehabilitation Act of 1973. . . .")

16, 2005, occurred after November 16, 2004[9], the court will turn to a determination of whether there is a genuine issue of material fact concerning the applicability of the three year statute of limitations in this case.

Again, "[i]n the case of such action brought for a willful violation of section 2615 of [the FMLA], such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2). Neither the FMLA nor the United States Supreme Court has defined this "willful" requirement, but the Eighth Circuit Court of Appeals has found that the "Supreme Court's definition for 'willful' under the [Fair Labor Standards Act ("FLSA")] applies to the term 'willful' in the FMLA." *Hanger v. Lake County*, 390 F.3d 579, 583 (8th Cir. 2004). The "Court defined willful in the context of the [FLSA] as follows: 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.*

In support of her claim that the Company acted willfully, Beekman points to its refusal to award her FMLA leave despite it having knowledge that she was taken to the emergency room on May 5, 2005, and subsequently had surgery[10]—the Company eventually agreed to grant Beekman FMLA leave for the surgery but not the emergency room visit. As the court will discuss in greater detail below, the Eighth Circuit Court of

---

[9] In its motion, the Company identified the following alleged instances of FMLA interference as in dispute in 2005: January 18; January 19; May 5; July 29; November 15; November 19; and November 20.

[10] It is undisputed that the Company knew Beekman had visited the emergency room and had surgery the following day, as a result of the ailment causing the emergency room visit.

Appeals has found that:

> FMLA leave "include[s] visits to a doctor when the employee has symptoms that are eventually diagnosed as constituting a serious health condition, even if, at the time of the initial medical appointments, the illness has not yet been diagnosed nor its degree of seriousness determined." *Caldwell v. Holland of Tex., Inc.*, 208 F.3d 671, 676 (8th Cir.2000) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 163 (1st Cir.1998)).

*Phillips v. Mathews*, 547 F.3d 905, 910 (8th Cir. 2008). Below, the court finds that there is a genuine issue of material fact concerning whether the Company interfered by denying the May 5th leave because, assuming FMLA leave was properly granted for the May 6th surgery, the emergency room visit to diagnose the need for surgery also should have been covered by the FMLA. *See id.* The fact-finder in this case is properly charged with determining whether the Company "knew or showed reckless disregard" for whether it was violating FMLA when it granted leave for what it apparently thought was a serious health condition but denied such leave for a visit to the emergency room for the condition's symptoms. Similarly, the court finds, below, that genuine issues of material fact exist concerning whether the Company interfered with Beekman's FMLA leave on July 29, 2005, and November 15, 2005, which also fall outside of the 2 year statute of limitations but within the 3 year statute of limitations. In each case, a reasonable fact-finder could determine that the violations were willful, and the court will not bar any of these claims as there is a genuine issue of material fact concerning whether the 3 year statute of limitations is applicable.

The Company also claims that the three year statute of limitations is not applicable because Beekman did not allege willfulness in her complaint. Beekman claims that she

sufficiently pled willfulness as the case is centered around the alleged willful acts of the Company and believes she fulfilled her duties for notice pleading.

The Federal Rules of Civil Procedure require a heightened standard for pleading fraud or mistake. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Willful conduct must only be alleged generally—it is only subject to liberal notice pleading standards. *See Haake v. County of Shawbee County, Kan*, 2009 WL 961435, *3 (D.Kan. 2009) ("Because willfulness allegations are subject only to liberal notice pleading standards, *see* Fed.R.Civ.P. 9(b) (fraud and mistake must be stated with particularity; conditions of mind may be alleged generally), defendant is entitled only to the most basic allegations which state a plausible claim for relief.")

In this case, Beekman generally alleges willful conduct in her complaint. For example, Beekman claims that "Defendant discriminated against Plaintiff and fired Plaintiff for exercising her rights under the Family and Medical Leave Act." Doc. No. 2. Beekman's complaint alleges conduct that inherently states willful conduct—for example, willful actions are inherent in retaliatory conduct. *See Block v. Sears Roebuck and Co.*, 2009 WL 36483, *4 (E.D.Mich. 2009) (finding that retaliation necessarily involves willfulness). The court finds that Beekman sufficiently pled willfulness in her complaint and that there is a genuine issue of material fact concerning whether the defendant acted willfully in allegedly interfering with Beekman's rights under the FMLA. Therefore, the court will deny summary judgment based on the Company's allegation that some of Beekman's claims are time barred as they all fall within the three year statute of limitations. The court finds a genuine issue of material fact concerning whether the

Company willfully violated the FMLA, thus, the three year statute of limitations will be applied to all claims for purposes of this motion for summary judgment.

### 2. *Beekman's FMLA interference claims*

The Company claims that Beekman's alleged FMLA violations should be dismissed because Beekman is unable to prove all of the necessary elements for any of the claims. "In an interference claim, an 'employee must show only that he or she was entitled to the benefit denied.'" *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). Beekman will establish that she was entitled to a benefit denied if she can prove the following five elements:

> 1) [Beekman] was an "[e]ligible employee," 29 U.S.C. § 2611(2); 2) [the Company] was an "[e]mployer," 29 U.S.C. § 2611(4); 3) [Beekman] was entitled to FMLA leave, 29 U.S.C. § 2612(a)(1); 4) [Beekman] gave [the Company] notice of her intent to take FMLA leave, 29 U.S.C. § 2612(e)(1); and 5) [the Company] denied [Beekman's] FMLA benefits to which she was entitled. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir.2007) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003))

*Schoonover v. ADM Corn Processing*, 2008 WL 282343, *12 (N.D.Iowa 2008). The Eighth Circuit Court of Appeals has elaborated on an employer's prohibited actions under the FMLA:

> An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise[] of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). An employer's action that deters an employee from

> participating in protected activities constitutes an "interference" or "restraint" of the employee's exercise of his rights. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001). "A violation of this provision creates what is commonly known as the interference theory of recovery." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir.2005). When an employer attaches negative consequences to the exercise of protected rights, it has "chilled" the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so. *Bachelder*, 259 F.3d at 1124.

*Stallings*, 447 F.3d at 1050. However, the Eighth Circuit Court of Appeals has also stated that "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 715 (8th Cir. 2008) (citing *Throneberry*, 403 F.3d at 977; *Phillips*, 547 F.3d at 911-12).

The Company claims, in relation to the above third element, that Beekman cannot prove that she was entitled to leave on any of the dates at issue. The Company also claims that Beekman cannot show that she gave proper notice, the fourth element, for her leave on July 29, 2005, and November 19 and 20, 2005. Beekman's arguments regarding these elements will be discussed in detail below.

### a. January 18 and 19, 2005

The Company claims that Beekman's absences on January 18 and 19, 2005, were for "family troubles" and "legal items" and not covered by the FMLA. As noted above, in the parties' statements of facts, they agree that Beekman properly received 1 point for leaving early on January 18, 2005, and received 2 points for a full-day absence on January 19, 2005. Therefore, the Company is entitled to summary judgment insofar as Beekman is alleging discrete claims of FMLA interference for January 18 and 19, 2005.

### b.    *May 5, 2005*

On May 5, 2005, the Company scored Beekman 1 point for leaving early to go to the hospital to have her mouth examined, and she was also, initially, scored 2 points for her absence for the oral surgery on May 6, 2005.  In support of her request for FMLA leave, Beekman submitted a Certification of Health Care Provider form indicating that she had a tooth abscess and needed to see a dentist as soon as possible.  The form noted that Beekman had a "serious health condition," and referenced the definition of serious health condition on the form[11], which is almost identical to the definition of serious health condition found in 29 C.F.R. § 825.114(a)(2) (prior to the January 15, 2009 amendments).  When this form did not suffice, Beekman requested another certification form from the Company, her dentist completed that form, and it was returned to the Company on May 11, 2005—this subsequent form did not indicate that Beekman had a serious health condition as the previous form had.  It also explained that Beekman would not require additional treatment, was not receiving continuing treatment, and did not need to be absent

---

[11]  The following definition of "serious health condition" was cited, and printed, on the form:

> (a) A period of incapacity of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves: (1) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or (2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

Doc. No. 28-5, p. 109 (footnotes omitted).

from work on any day other than May 6, 2005. On May 18, 2005, the Company received a revised certification form from the dentist, which contained additional notes. The notes indicated that Beekman was receiving antibiotics and had been seen in the emergency room. The form was changed to reflect that Beekman did have a "serious health condition." This form referred more precisely to what section of the form's "serious health condition" definition Beekman allegedly fell under:

> A period of incapacity of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves: (1) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider. . . .

Doc. No. 28-5, pp. 93-97. The Company granted FMLA leave for the surgery on May 6, 2005, but still refused to excuse the point from May 5th.

In addition to its claim that the forms never demonstrated Beekman had a serious health condition on May 5th, the Company claims that Beekman cannot claim that she was incapacitated that day because she was at work—she worked all but the last half-hour of her shift. Beekman claims that the mouth pain was due to a serious health condition as evidenced by her obtaining surgery the following day. Additionally, Beekman claims that she was receiving continuing treatment, which included antibiotics and provided documentation of the treatment to the Company.

The Eighth Circuit Court of Appeals has recently explained:

> FMLA leave "include[s] visits to a doctor when the employee has symptoms that are eventually diagnosed as constituting a serious health condition, even if, at the time of the initial medical appointments, the illness has not yet been diagnosed nor its degree of seriousness determined." *Caldwell v.*

> *Holland of Tex., Inc.*, 208 F.3d 671, 676 (8th Cir.2000)
> (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 163
> (1st Cir.1998).)

*Phillips v. Mathews*, 547 F.3d 905, 910 (8th Cir. 2008). The Company admits that it approved FMLA leave for Beekman's absence for oral surgery on May 6, 2009. The Company has not argued that the May 6th FMLA leave was for an absence other than the alleged "serious health condition" relating to Beekman's oral surgery or that it granted FMLA leave on May 6th improperly or gratuitously[12]. Therefore, the court will not re-evaluate the Company's decision to consider the May 6, 2005, absence as qualifying FMLA leave. Assuming the May 6th absence was FMLA leave for a serious health condition, *Phillips* requires that the emergency room visit for symptoms later diagnosed as constituting the serious health condition also be considered FMLA leave. *See id.* Viewing the record in the light most favorable to Beekman, the Company is not "entitled to judgment as a matter of law," FED R. CIV. P. 56(c), because there is a genuine issue of material fact concerning whether FMLA leave should have been granted for Beekman's leaving early on May 5th, and the court will deny its motion for summary judgment regarding the alleged May 5th FMLA violation.

------

[12] The court recognizes, however, that Crimmins states, in her affidavit: Although it still was not clear whether Ms. Beekman had a serious health condition based on the revised Certification, I approved Ms. Beekman for leave on May 6, 2005, but not May 5, 2005, since the Certification stated that May 6, 2005 was the only day for which Ms. Beekman needed to be absent from work. I subsequently conferred with Ms. Beekman's Union representative, Mike Nelson, about my decision and he agreed that my resolution of the matter was satisfactory.

Doc. No. 26-10, p. 11.

### c.    July 29, 2005

On July 29, 2005, Beekman received 2 points for arriving to work more than two hours late. Beekman claims that she had scheduled an appointment for her mother on that day and believed that she would arrive at work, on time, after the appointment—Beekman had been previously granted FMLA leave for her mother's cancer treatment and appointments. Despite these intentions, Beekman did not arrive to work on time.

Beekman claims that she was late to work because of "transportation issues[13]." Doc. No. 28-4, p. 83. According to Beekman, she told Mary Crimmins why she was late for work once she returned to work. *Id.* The Company denies receiving any documentation demonstrating that Beekman's mother actually had a doctor's appointment on July 29, 2005, and claims there is nothing in the record, aside from Beekman's own testimony, indicating that she needed FMLA leave for July 29th. Beekman claims that the lack of documentation related to the appointment is not her fault because leave had already been granted, and the Company had the duty to ask for more information regarding the visit if they needed it. Beekman admits that she had to put the Company on notice that she needed the leave but claims that she did that through conversations with Mary Crimmins and Neal Schmidt, a supervisor.

Once leave is granted, "[t]he employer may require that the eligible employee obtain subsequent recertifications on a reasonable basis." 29 U.S.C. § 2613(e); *see also Dry v. The Boeing Co.*, 92 Fed.Appx. 675, 677 (10th Cir. 2004)(citing rule); *Stoops v.*

---

[13]    In her brief, Beekman claims that she was late because "she had to take her mother to the doctor and there were complications." Doc. No. 28-6, p. 17. The reasonable inference from Beekman's use of "complications," in her brief, is that there were problems with her mother's condition. However, Beekman more precisely stated that she had "transportation issues," in her affidavit, and the court will apply this more precise excuse in its analysis.

*One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998)(same); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)(same). The Company does not appear to claim that it requested recertification for Beekman's leave related to her mother's treatment and appointments after Beekman informed them that she had been at an appointment. Therefore, even assuming Beekman provided no paperwork for the absence, that fact alone does not show that the interference claim should be dismissed, because the Company has the option to ask for recertification pursuant to 29 U.S.C. § 2613(e). What is at issue is whether Beekman properly notified the Company.

When taking intermittent leave for treatment, an employee "shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider of the employee or the health care provider of the son, daughter, spouse, or parent of the employee, as appropriate." 29 U.S.C. § 2612(e)(2)(A). The Company has not argued that Beekman failed to meet this requirement. However, viewing the record in the light most favorable to Beekman, the record shows that she complied with this requirement as best as she could, by scheduling the appointment during a time when she was not scheduled to work. Beekman also needed to provide notice:

> [T]he employee shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

U.S.C. § 2612(e)(2)(B). Since the appointment was scheduled during a time when Beekman was not scheduled to work, there was no reason for her to give the Company notice of the appointment, prior to the appointment, because she had planned to finish the

appointment and appear at work as scheduled. Once the delay—which was allegedly related to the appointment—arose, Beekman claims that she contacted the Company. Although the parties disagree on whether, and when, Beekman contacted the Company, whether the notice was as soon as practicable, and who she talked to, these questions simply establish that there is a genuine issue of material fact that will be resolved by making credibility determinations—determinations for the trier of fact rather than the trier of law. Therefore, the court will deny summary judgment on Beekman's alleged discrete act of FMLA interference occurring on July 29, 2005.

### d.    November 15, 2005

On November 15, 2005, the Company scored Beekman 1 point for an improper call-in, but she was granted FMLA leave for being absent that day[14], due to a work-related back injury. Beekman denies that her call-in was improper because she had previously called Crimmins concerning her absences and claims that Crimmins admits she is the proper person to call for FMLA leave[15]. In addition, Beekman claims that the Company changed its rationale for assessing the point—Beekman claims that, initially, the point was scored because she allegedly called-in late, but after she provided the Company with cell phone records showing that the call was not late, the Company claimed the point was for failing to call a supervisor. The Company argues that, since Beekman admits that she did not call her supervisor as required under the Company's handbook and written attendance

---

[14]   Beekman was scored 1 point for the improper call-in, but she was not scored any points for her absence—an additional 2 points would have been assessed for the absence had it not been excused by FMLA leave, or some other eligible leave.

[15]   Although Crimmins said that she would be an appropriate person to call if an employee is taking FMLA leave, she was insistent that the employee also needed to call his or her supervisor. Doc. No. 28-4, p. 25.

policy, there is no genuine issue of material fact concerning whether the point was properly scored.

An employee can be disciplined while on FMLA in the same manner as if he or she is not on FMLA. *See Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005) (finding that an employee is given the same rights regardless of whether they are on FMLA leave). However, "an employer's action that deters an employee from participating in protected activities constitutes an 'interference' or 'restraint' of the employee's exercise of his rights." *Stallings*, 447 F.3d at 1050 (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001)). This is because "[w]hen an employer attaches negative consequences to the exercise of protected rights, it has 'chilled' the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so." *Id.* (citing *Bachelder*, 259 F.3d at 1124).

The court agrees that Beekman should be disciplined in relation to the Company's call-in procedures in a way similar to employees who are not on FMLA leave. However, viewing the record in the light most favorable to Beekman, there are indications that the Company more strictly or inconsistently enforced its call-in policy in relation to Beekman's FMLA leave. First, the Company changed its rationale for assigning Beekman the point. It initially claimed that Beekman received the point for calling-in late, but once Beekman provided proof that she had called Crimmins on time, the Company claimed that the point was scored because Beekman called the incorrect person. Contrary to the Company's allegations, this series of events has support in the record from more than just Beekman's own testimony. *See* Doc. No. 28-4, p. 25 (Crimmins discusses reasons for assigning the point); *Id.*, p. 32 (Neal Schmidt states if FMLA has been approved, "[t]hen Mary [Crimmins] knows about it before I do, and she would notify us, and there wouldn't be a need for calling."); Doc. No. 26-10, p. 269 (Notes regarding Beekman's voice mail

message, explaining that the answering machine clock was incorrect by one hour). Second, Beekman claims that she had been allowed to call Crimmins in the past concerning her leave, which is also supported by Neal Schmidt's deposition. *See* Doc. No. 28-4, p. 32. There is sufficient evidence, viewing the facts in this summary judgment record in the light most favorable to Beekman, for a reasonable jury to find that the Company interfered with Beekman's FMLA leave by attaching a negative consequence to Beekman's protected FMLA rights. *See Stallings*, 447 F.3d at 1050.

The Company cites *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 715 (8th Cir. 2008) as an instance where the Eighth Circuit Court of Appeals held there was no FMLA interference where an employee was terminated based on her failure to comply with the employer's call-in policy. Although the circuit, in *Bacon*, confronted a factual scenario similar to the case before this court—an employee was terminated for failing to follow her employer's call-in procedures while taking FMLA leave, *Bacon*, 550 F.3d at 715—in *Bacon*, the employee did not call-in at all and lacked evidence that provided a genuine issue of material fact concerning whether her employer was requiring strict compliance with a policy, when it had not done so before. The court will deny the Company's motion for summary judgment with respect to Beekman's alleged discrete act of FMLA interference on November 15, 2005.

### e.     *November 19 and 20, 2005*

On both November 19 and 20, 2005, a Saturday and Sunday, the Company scored Beekman 2 points for an un-excused absence, for each day, and an additional point for each improper call-in, for a total of 6 points. The Company claims that Beekman was supposed to work, as all production employees were scheduled to work that weekend. Beekman claims she did not know that she had to work, because her doctor had restricted her to working 40 hours per week—the Company notes that she had not logged 40 hours

during the week prior to November 19th.  The parties agree that the Company once had a policy where employees with 40 hour work week restrictions were not required to work weekends, and that the policy changed, requiring employees with 40 hour work restrictions to work scheduled weekends.  However, they disagree on when the policy changed.  The parties agree that, at the most, Beekman should have been assessed only 5 points, rather than 6 for a 2 day absence.

Because Beekman does not even allege that her absences on November 19 and 20, 2005, should be covered by FMLA leave, she cannot maintain a discrete claim for FMLA interference related to those dates.  Elements three through five, above, are not met when an employee is not entitled to FMLA leave, did not give notice of her intent to take FMLA leave, and was ultimately not denied an FMLA benefit to which she was entitled.  *See Schoonover*, at *12.  Although Beekman would have been entitled to FMLA leave had she worked 8 hours on Saturday, November 19th, she had not put in the 8 hours and had not, therefore, triggered the application of her FMLA leave.  Further, Beekman admits that the Company policy at the time required her to work—she just disputes whether she was given proper notice of the changed policy.  Beekman simply cannot show that she was "entitled to the benefit denied." *See Stallings*, 447 F.3d at 1050.  Summary judgment will be granted on Beekman's discrete claims of FMLA interference for November 19 and 20, 2005[16].

### 3.    *Beekman's FMLA retaliation claim*

The Company seeks dismissal of Beekman's FMLA retaliation claim.  Beekman does not have direct evidence of retaliation under the FMLA, as a result, the court must

---

[16]    However, the court again notes that it is undisputed that Beekman should only have been awarded 5 points for the two day absence, rather than 6.

"analyze her FMLA retaliation claim under the *McDonnell Douglas*[17] burden-shifting framework." *Phillips*, 547 F.3d at 912. In order to show a prima facie case for retaliation, an employee must "show that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *Id.* (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir.2002)). The "causal connection required for a prima facie case is not 'but for' causation, but rather, a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *Id.* at 1003 (citing *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897).

If the employee establishes a prima facie case, "[t]he employer must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (*en banc*); *see also Smith*, 302 F.3d at 833. "If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual." *Smith*, 302 F.3d at 833 (citing *Kiel*, 169 F.3d at 1135).

### a. *Beekman's prima facie case of FMLA retaliation*

The Company does not dispute that, prior to her discharge in November of 2005, Beekman had engaged in FMLA-protected activity on numerous occasions while employed at the Company, or that she suffered an adverse employment action when it terminated her. However, the Company claims that Beekman cannot establish a causal connection between her protected activity and her termination. Although Beekman's termination occurred within a week of her last alleged request for FMLA leave, the Company downplays this

---

[17] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973).

temporal proximity because of the frequency of Beekman's use of FMLA leave. The Company notes that Beekman took FMLA leave on more than 30 separate occasions. Beekman claims that the temporal proximity is close and does establish a genuine issue of material fact concerning causation.

In *Smith*, the Eighth Circuit Court of Appeals provided the following detailed guidance for determining whether "temporal proximity between [the] protected act and [the] adverse employment action can establish the necessary causal connection:"

> "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel*, 169 F.3d at 1136. A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement. *See Bassett v. City of Minneapolis*, 211 F.3d 1097, 1105-06 (8th Cir.2000) (extensive pattern of protected activity followed by disciplinary measures established causation); *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir.2000) (large number of adverse actions within four months of protected activity, plus evidence of pretext, established causation). But even without a pattern, we have sometimes held that the timing of one incident of adverse employment action following protected activity sufficed to establish causal connection, e.g., *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193-94 (8th Cir.1995) (three months between filing administrative complaints and firing established causal connection), and we have done this after our *en banc* decision in *Kiel*. *See Sprenger v. Federal Home Loan Bank*, 253 F.3d 1106, 1113-14 (8th Cir.2001) (temporal proximity sufficient to establish prima facie case of disability discrimination, but not to show pretext); *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1196 (8th Cir.2001) ("Foster established a temporal connection between her requests for accommodating Terry's disability and her termination, permitting an inference of retaliation."). *But see Gagnon v. Sprint Corp.*, 284 F.3d

839, 851, 852 (8th Cir.2002) (one month's time between response to EEOC claim and adverse action did not establish causation), petition for *cert.* filed (Aug. 19, 2002) (No. 02-273); *Kipp*, 280 F.3d at 897 ("[A] 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge."); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir.2000) (same); *Bradley v. Widnall*, 232 F.3d 626, 633 (8th Cir.2000) (Plaintiff "must do more than point to the temporal connection between the filing of her first complaint and the Air Force's allegedly adverse actions.").

*Smith*, 302 F.3d at 832-3. After reviewing circuit and United States Supreme Court precedent, the *Smith* court found a causal connection due to temporal proximity when the employee's leave began on January 1st and she was discharged on January 14th. *Id.* at 833. The court stated that the "two events are extremely close in time and we conclude that under our precedent this is sufficient, but barely so, to establish causation, completing [the plaintiff's] prima facie case." *Id.*

In this case, the temporal proximity between Beekman's last instance of FMLA leave and her termination is even closer than in *Smith*. On November 15, 2005, Beekman took FMLA leave and on November 21, 2005, only six days later, she was terminated. Although there are factors that decrease the importance of this timing[18], the court finds

---

[18] There are two factors that slightly reduce the importance of the temporal proximity. First, Beekman appears to have taken a substantial amount of FMLA leave. According to the Company, she took FMLA leave on approximately 30 separate occasions. Although taking FMLA leave certainly does not make any actual retaliation less blameworthy, the more leave an employee takes the greater likelihood that the employee's termination will occur in temporal proximity to FMLA leave. For example, if Beekman had only taken FMLA leave on one occasion, and it was six days before her termination, the chances that the termination coincidentally coincided with the FMLA leave would be

(continued...)

in this case that the six day temporal proximity is sufficient under *Smith* to establish Beekman's prima facie case for FMLA retaliation.

> ### b. *The Company's legitimate, non-discriminatory reason and Beekman's showing of pretext*

The Company asserts, as its "legitimate, non-discriminatory reason for the adverse employment action," *see Kiel*, 169 F.3d at 1135, that Beekman had a remarkably poor attendance record and was ultimately fired for excessive absenteeism as measured by the Company's attendance policy's points system. Beekman first began accumulating attendance points as early as August 2001, according to the Company, and continued to receive verbal and written warnings throughout her time with the Company. The Company claims that Beekman did not heed these warnings and continued to accrue points up until her termination.

Beekman claims that, even though she had 17 points on her attendance record, at least 3 of the points were scored in violation of the FMLA. In addition, Beekman claims that the fact that the Company overlooked mis-scored points when reviewing its decision to terminate her, on multiple occasions, shows that the Company intended to fire her for exercising her rights under the FMLA.

The Company claims Beekman cannot show that its assertion that it terminated her because she accumulated at least 15 attendance points is not the real reason for her termination. In addition, the Company claims that Beekman's attendance record, since she

---

[18](...continued)
small. This does not weigh heavily against the close temporal proximity of FMLA leave and termination, but the court is mindful of this point. Second, Beekman missed two days of unexcused work between the day she took FMLA leave and the day she was terminated—above, the court dismissed Beekman's discrete interference claim related to these days.

began working at the Company, shows ongoing and severe attendance problems, and that even with over 100 employee personnel files from the Company, she was unable to show a similarly situated person who was treated differently than she.

"It is possible for strong evidence of a prima facie case to establish pretext as well. . . ." *Smith*, 302 F.3d at 833-4 (citing *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 726 (8th Cir.2001)). "To carry the burden of showing pretext, [an employee must] show that [the employer's] justification for the firing was unworthy of credence. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "One method of proving pretext is to show that the employer's proffered explanation had no basis in fact." *Id.* (citing *Erickson*, 271 F.3d at 727).

Beekman's prima facie case—primarily based on the proximity of her FMLA leave and termination—is not strong enough to show pretext. *See Smith,* 302 F.3d at 834 (finding the plaintiff's prima facie case built on temporal proximity was "far from strong.") (citing *Sprenger*, 253 F.3d at 113-14). However, Beekman does not rely only on a strong prima facie case, but instead attacks the Company's primary justification for terminating her—her accumulation of at least 15 attendance points.

The court found that there is a genuine issue of material fact concerning whether Beekman should have been scored 1 point for leaving early on May 5, 2005. Without this point, Beekman would have accumulated 16 points. Similarly, the court found a genuine issue of material fact concerning whether Beekman should have been scored 2 points for arriving at work more than two hours late on July 29, 2005. This would leave Beekman with 14 points. The court also found a genuine issue of material fact concerning whether Beekman should have received 1 point for an improper call-in on November 15, 2005. This would leave Beekman with 13 points. Lastly, it is undisputed that 1 point was improperly scored on November 20, 2005, the second day of Beekman's two day absence

prior to her termination. Doc. No. 26-6, p. 11, ¶ 43. The Company is, therefore, left with only 12 points justifying Beekman's termination. According to the Company's attendance policy, Beekman would not have been terminated for accumulating 12 points. Beekman's ability to show a genuine issue of material fact concerning whether she had lawfully accumulated 15 or more attendance points calls into question the Company's motive in terminating her.

The Company also relies on Beekman's "abysmal" attendance record while with the Company as a reason to terminate her. However, Beekman was told that she was being terminated for being "at or above 15 attendance points." Doc. No. 28-4, p. 13. In addition, not only has Beekman generated a genuine issue of material fact concerning several of the points, but the Company admits that it mis-scored one of the points for her absence on November 20, 2005, even though it had checked and "double checked" the accuracy of the points. *Id.* Considering all of the points the Company has scored against Beekman, the scoring of one erroneous point might not typically be significant. However, the fact that the Company reviewed the scoring of this point multiple times and missed such an obvious error, considering its simplistic points system, provides evidence supporting Beekman's claim of pretext. A reasonable jury could find that the Company either did not review the points, as it claims, or consciously mis-scored a point against Beekman in order to further justify her termination.

Beekman has generated a genuine issue of material fact concerning whether the points asserted as justifying her termination were properly scored and provides other evidence to show that the Company may have purposely mis-scored her attendance points. Therefore, the court will not grant summary judgment on Beekman's claim that she was terminated in retaliation for taking FMLA leave.

### C.  Beekman's Common Law Wrongful Discharge Claim

The Company seeks summary judgment on Beekman's common law wrongful discharge claim.  First, the Company claims that Beekman was not an at-will employee because she was a member of a union and employed under a collective bargaining agreement containing a just cause provision, and therefore not entitled to the public policy exception to the at-will employment doctrine.  Second, the Company alleges that Beekman cannot prove a prima facie case of wrongful discharge because she cannot show the requisite causation.  Lastly, the Company claims Beekman cannot show a genuine issue of material fact exists regarding whether the Company's "other justification" for terminating Beekman—her accumulation of more than 15 attendance points—was the real reason for her termination.  The court will take up these arguments, and Beekman's responses to them, in turn.

#### 1.  Beekman's status as an at-will employee

The Company claims that Beekman's wrongful discharge claim should be dismissed because she was not an at-will employee and has not even alleged in her complaint that she was an at-will employee.  In response to these claims, Beekman argues that there is no requirement that she plead her at-will status in her complaint.  In support of this argument, Beekman claims that the fact that Iowa Civil Forms § 33.3 does not contain specific language indicating the employee is at-will is evidence that there is no such requirement.  In addition, the complaint complies with Rule 8(a)'s simplified pleading standard, according to Beekman.  Beekman is prepared to amend her complaint, if the court finds it necessary.  Concerning whether Beekman actually is an at-will employee, she claims that, under Iowa law, an employee can be both an at-will employee and have an employment contract pursuant to a CBA—an employment contract created by a CBA does not always make an employee not at-will.  Beekman alleges that, instead, employees are

41

at-will unless they are independent contractors. Beekman also makes several other arguments that are not discussed by the Company, including that the claim is not preempted by federal law and that an employee cannot waive their right to be covered by Iowa's workers' compensation laws. In its reply, the Company claims that Beekman has ongoing attendance problems, that it terminated her for accumulating 15 points, and that it has provided Beekman with over one hundred personnel files and that she has been unable to point to a similarly situated employee that was treated more favorably.

The court believes that the Company has muddled the issue of whether Beekman can bring a claim for wrongful discharge in violation of public policy, by disputing whether she is or is not at-will. Instead, the issue is whether the public policy exception to the at-will doctrine should be extended to union employees covered by a just cause termination provision and whether federal law would preempt such an extension. The Supreme Court of Iowa has provided guidance on both of these issues in *Conaway v. Webster City Products Co.*, 431 N.W.2d 795 (Iowa 1988).

In *Conaway*, the plaintiffs were employed under a CBA between their union and employer, which contained a just cause provision. *Conaway*, 431 N.W.2d at 796. The plaintiffs, having filed workers' compensation claims before being terminated, brought an action for both discharge in violation of their CBA and discharge in violation of public policy, in Iowa district court. *Id.* The district court held that the two actions were preempted by section 301 of the Labor Management Relations Act ("LMRA")[19]. *Id.* The

---

[19] Section 301 provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court

(continued...)

Supreme Court of Iowa, relying primarily on *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399 (1988)[20], reversed the district court's finding and held that the claims were recognizable state tort claims. *Id.* at 800. In doing so, the court first evaluated whether the LMRA precluded an employee, under a CBA, from bringing a claim for retaliatory discharge for filing a workers' compensation claim under Iowa law. *Id.* at 798. The court found that the *Lingle* Court's analysis of Illinois's tort of retaliatory discharge, and its finding that the claim was not preempted by the LMRA, was applicable to the Iowa law. *Id.* at 798-99. Like the Illinois law, the Iowa law did not require interpretation of the CBA in order for a plaintiff to prove the elements of the claim and for the defendant to prove a defense. *Id.* at 799.

---

[19](...continued)
> of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The United States Supreme Court has found that "when a state-law claim is substantially dependent upon an analysis of the terms of a [CBA], the claim must either be treated as a section 301 claim, subject to any grievance and arbitration provision provided by the agreement, or be dismissed as preempted by federal labor law." *Conaway*, 431 N.W.2d at 797 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217-19 (1985)).

[20] In *Lingle*, the United States Supreme Court evaluated "whether an employee covered by a [CBA] that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge." *Lingle*, 486 U.S. at 401. The Court held that "an application of state law is pre-empted by § 301 of the [LMRA] of 1947 only if such application requires the interpretation of a [CBA]." *Id.* at 413. The plaintiff in *Lingle* had brought a claim alleging that she was discharged for exercising her Illinois workers' compensation rights. *Id.* at 402. Although the plaintiff was subject to a CBA, with a just cause provision, the Court found that the claim, under Illinois law, did not require interpretation of the CBA and therefore was not preempted by the LMRA. *Id.*

The court also addressed the presence of a just cause provision in the plaintiffs' CBA. Also following the Court in *Lingle*, the *Conaway* court found that even a just cause provision would not require interpretation of the CBA. *Id.* at 799. According to the *Lingle* Court, this is significant because:

> For while there may be instances in which the National Labor Relations Act preempts state law on the basis of the subject matter of the law in question, section 301 preemption merely insures that federal law will be the basis for interpreting [CBAs], and says nothing about the substantive rights a state may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements.

*Id.* at 799 (quoting *Lingle*, 108 S.Ct. at 1883). The Court also noted concerning the presence of a just cause provision, that "even if dispute resolution pursuant to a [CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for section 301 preemption purposes." *Id.* The *Conaway* court found that the retaliatory discharge claim was, therefore, independent of the CBA and not preempted by the LMRA[21]. *Id.* at 800.

---

[21] In *Conaway*, the Supreme Court of Iowa recognized the plaintiffs' wrongful termination in violation of public policy claims, despite the existence of the CBA containing a just cause provision. However, there are other factors that support the court's recognition of these claims. First, Chapter 85 of the Iowa Code states that: No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." IOWA CODE § 85.18. Second, in *Springer v. Weeks and Leo Co., Inc.*, 429 N.W.2d 558 (Iowa 1988), the case creating the public policy exception at issue, the Supreme Court of Iowa stated:

> We deem [Iowa Code § 85.18] to be a clear expression that it is the public policy of this state that an employee's right to seek the compensation which is granted by law for

(continued...)

In this case, Beekman was employed under a CBA with a just cause provision. Doc. No. 26-10, p. 22; Doc. No. 28-3. Although the Company did not argue that the LMRA preempted the wrongful discharge claim, the court finds that the claim is not preempted. *See Conaway*, 431 N.W.2d at 799-800; *Lingle*, 486 U.S. at 409-410. In addition, the court finds that the Supreme Court of Iowa has recognized the application of the wrongful discharge claim to union employees employed under a CBA containing a just cause provision, *see Conaway*, 431 N.W.2d at 800, and that there are additional factors supporting the application. *See* IOWA CODE § 85.18; *Springer*, 429 N.W.2d at 560-61.

### 2. *Beekman's prima facie case of wrongful discharge*

The Company admits that Beekman was discharged in the same month as her aggravation of a prior workplace injury. Doc. No. 26-2, p. 19. The Company argues, however, that Beekman had pursued at least four different workers' compensation claims while employed at the Company and that it respected her right to pursue each claim without reprisal. Beekman does not contest the Company's assertion that she made several workers' compensation claims, and took time off because of her most recent injury—the aggravated back injury—on September 23, 2005, October 25, 2005, and November 15, 2005. Instead, Beekman argues that the temporal proximity of these absences is close to her November 22, 2005, termination, which supports her claim that the Company fired her because of the injury. In addition to temporal proximity, Beekman claims that at the time of her termination, she was on a 40 hour a week work restriction because of the injury and

---

[21] (...continued)
      work-related injuries should not be interfered with regardless
      of the terms of the contract of hire.

*Springer v. Weeks and Leo Co., Inc.*, 429 N.W.2d 558, 560-61 (Iowa 1988).

was being forced to take FMLA leave when she could not work because of the injury. Beekman notes that Crimmins's actions to get rid of her lifting restriction were, by Crimmins's admission, an uncommon occurrence. According to Beekman, the Company's failure to give her workers's compensation benefits and actions to remove her lifting restriction show that the Company wanted to get rid of her.

Iowa courts have recognized a cause of action for an "employee who is discharged contrary to public policy, which includes being discharged 'due to the filing of a workers' compensation claim.'" *Napreljac v. John Q. Hammons Hotels, Inc.*, 505 F.3d 800, 802 (8th Cir. 2007) (citing *Springer*, 429 N.W.2d at 560). In *Napreljac*, the Eighth Circuit Court of Appeals explained:

> To recover damages, the employee must prove that he was discharged in retaliation for engaging in protected activity. The Supreme Court of Iowa has not attempted to define protected activity in this context, other than to describe it generally as "asserting statutory workers' compensation rights." *Springer v. Weeks & Leo Co, Inc.*, 475 N.W.2d at 633.

*Id.* This court has previously stated the elements of a prima facie case of retaliatory discharge in violation of public policy as the following: "(1) the plaintiff engaged in protected activity; (2) the plaintiff suffered adverse employment action; and (3) the circumstances give rise to an inference that the plaintiff's discharge was causally related to her protected activity." *Raymond v. U.S.A. Healthcare Center-Fort Dodge, L.L.C.*, 468 F.Supp.2d 1047, 1058-9 (N.D.Iowa 2006) (citing *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 281 (Iowa 2000); *Teachout v. Forest City Community School Dist.*, 584 N.W.2d 296, 299 (Iowa 1998); and *Lloyd v. Drake University*, 686 N.W.2d 225, 228 (Iowa 2004)). In this case, the Company only challenges Beekman's ability to identify a

genuine issue of material fact concerning the third element—that her termination was causally related to any of her workers' compensation claims.

The Iowa Supreme Court has explained the causation standard:

> The causation standard in a common-law retaliatory discharge case is high. [*Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992)] (discussing statutory retaliatory discharge claim). The employee's engagement in protected conduct must be the determinative factor in the employer's decision to take adverse action against the employee. *See Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990); *Graves v. O'Hara*, 576 N.W.2d 625, 628 (Iowa App.1998). A factor is determinative if it is the reason that "tips the scales decisively one way or the other," even if it is not the predominant reason behind the employer's decision. *See Smith*, 464 N.W.2d at 686.

*Teachout v. Forest City Community School Dist.*, 584 N.W.2d 296, 301-302 (Iowa 1998). This court has explained, however, that, "[w]hile the causation standard is high, it generally 'presents a question of fact . . . . Thus, if there is a dispute over the conduct or the reasonable inferences to be drawn from the conduct, the jury must resolve the dispute.'" *Brown v. Farmland Foods, Inc.*, 178 F.Supp.2d 961, 981 (N.D.Iowa 2001) (citing *Fitzgerald*, 613 N.W.2d at 289 (in turn citing 2 Henry H. Perrit, Jr., Employee Dismissal Law and Practice § 7.21, at 54 (4th ed.1998)). Temporal proximity may "be a factor weighing in favor of finding causation, [but] in the absence of other evidence, temporal proximity is 'insufficient to establish a prima facie case of retaliatory discharge.'" *Bumgarner v. Grafco Industries, LP*, 581 F.Supp.2d 1052, 1063 (S.D.Iowa 2008) (citing *Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1002-03 (8th Cir. 2006)).

Beekman has identified the close proximity of her termination to her injury, but also other actions by the Company showing that it may not be willing to tolerate absence or

decreased abilities due to workplace injuries. For example, Beekman argues that Crimmins's actions in getting her 30 pound lifting restriction removed evidenced causation. Crimmins explained the actions she took on October 10, 2005, which caused the restriction to be removed, at her deposition:

> [A]t some point we talked about her having lifting restriction. . . . She must have told me she had a lifting restriction. . . . She told me about this lifting restriction, and I was concerned about her doing her job. I wouldn't – she couldn't do her job with the lifting restriction that she had. So a phone call was made to Dr. Raval's office by me. I spoke to Carrie, a nurse, and she called me back that – within a few minutes. Lisa was in the room and so was Mike Nelson while we waited for the – while I called Carrie and then while we waited for the phone call, and that's where Carrie said there are not lifting restrictions, but she does – the doctor wants her to continue on the 40-hour week, and that's why I wrote that on there.

Doc. No. 28-4 p. 23. Crimmins also admitted that it was not common to get lifting restrictions removed by phone, that she received no written material from the doctor's office, and that she did not have the conversation with the nurse on speaker phone. *Id.* Beekman claims that she should have been given workers' compensation benefits for the leave related to her back injury, but instead was forced to take FMLA leave—the record does not make clear the circumstances surrounding Beekman's FMLA leave for her workplace injury but Beekman appears to have taken FMLA leave for a workplace injury. Viewing the record in the light most favorable to Beekman, the temporal proximity between her protected activity and her termination, as well as the Company's treatment of her workplace injuries, such as Crimmins's actions to remove her lifting restriction and the requirement that Beekman take FMLA leave for her workplace injury, provide genuine

issues of material fact concerning whether her termination was causally linked to workers' compensation claims.

### 3. The Company's legitimate, nondiscriminatory reason and Beekman's showing of pretext

The Company argues that even if Beekman can establish a causal connection between a workers' compensation claim and her termination, it has identified another justification for Beekman's termination—her abysmal attendance record and accumulation of more than 15 attendance points. This court has previously explained the application of the *McDonnell Douglas* burden-shifting analysis to retaliatory discharge in violation of public policy:

> If the employer does offer "other justifications" for allegedly retaliatory conduct. . . , in order for the plaintiff to defeat summary judgment on the retaliation claim, the plaintiff must generate genuine issues of material fact that the "other justifications" are not the true reasons for the employer's actions, but are, instead, pretexts for retaliatory action or insufficient, standing alone, to justify the adverse action in question, so that the plaintiff's protected activity was the "final straw" in favor of the adverse action. *See Fitzgerald*, 613 N.W.2d at 282-289.

*Raymond*, 468 F.Supp.2d at 1060. As with Beekman's FMLA retaliation claim, the Company claims that she cannot show that their asserted reason for terminating her—that she had accumulated more than 15 points—is pretext for retaliation. The court, in its above discussion of pretext in relation to Beekman's FMLA retaliation claim, found that there is a genuine issue of material fact concerning whether Beekman should have been scored more than 12 attendance points. Here, Beekman is able to attack the 15 point justification for the same reason. This—along with the evidence in the record that the Company took the admittedly unusual step of having a lifting restriction removed and the

close proximity between her termination and her leave for the aggravation of a workplace injury—provide sufficient evidence on the record for a reasonable juror to find that the Company's asserted reason for terminating Beekman, her accumulation of 15 or more attendance points and abysmal attendance record, are pretext for a retaliatory discharge in violation of public policy. Credibility determinations are imperative to determining pretext in this case and, therefore, this claim is also appropriately presented to a finder of fact.

### III.  CONCLUSION

THEREFORE, Defendant Nestle Purina Petcare Company's Motion for Summary Judgment, Doc. No. 26-1, is granted in part and denied in part as follows:

1.      The motion is granted as to Beekman's discrete claims of FMLA interference occurring on January 18 and 19, 2005 and November 19 and 20, 2005, and denied for her remaining claims of FMLA interference.

2.      The motion is denied as to Beekman's claim for FMLA retaliation.

3.      The motion is denied as to Beekman's claim for wrongful discharge in violation of public policy.

**IT IS SO ORDERED.**

**DATED** this 25th day of June, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA